1          UNITED STATES DISTRICT COURT

2                              for the

3                    Northern District of Illinois

4                      EASTERN DIVISION

**FILED**

ᘓ FEB ₃ 2020

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| Adrian Rangel | } |
| plaintiff | } |
| | } |
| v. | } |
| | } |
| Twitter Inc | } |
| | } |
| Jack Dorsey, | } |
| Defendants | } |
| | } |
| | } |

Judge Manish S. Shah

Magistrate Judge:

Sidney I. Schenkier

Cause: 1:19-cv-07020

5    **Plaintiff's Response to Defendant Twitter, Inc and Defendant**
6    **Jack Dorsey's Motion to Dismiss and, in the Alternative, to Transfer Venue.**
7

8    Comes now the Plaintiff, Adrian Rangel, Pro Se and submits his Plaintiff's Response

9    to Defendant Twitter, Inc and Defendant Jack Dorsey's Motion to Dismiss and, in the

10   Alternative, to Transfer Venue stating:

11

12   Rule 8. General Rules of Pleading (a) CLAIM FOR RELIEF. A pleading that

13   states a claim for relief must contain: (1) a short and plain statement of the

14   grounds for the court's jurisdiction, unless the court already has jurisdiction and

15   the claim needs no new jurisdictional support; (2) a short and plain statement of

16   the claim showing that the pleader is entitled to relief; and (3) a demand for the

17   relief sought, which may include relief in the alternative or different types of relief.

18

19

## I.   Twitter False Altruism ?

20

21   **DEF**. P. 1 par. 1 "….facilitate conversation around the world. "

22   **PLTF** .  Although Twitter is global, it is a US Corporation and subject to US law. Plaintiff

23   contends that although Twitter portends to " facilitate" conversation around the world it

24   does the exact opposite thru its confusingly conflicted Twitter TOS and frustrating threat

25   to *suspend any account for any reason*. Plaintiff contends that by Twitter putting forth in

26   its TOS that it protects against hate speech against only certain groups whilst not others

27   the Defendants are in offending of US equal protection laws and 14th amendment

28   fundamental fairness laws at minimum. In addition, Twitter implies to reward its

29   members with continued access for not speaking against certain protected groups whilst

30   at the same time threatening to *suspend or terminate members for any or no reason*

31   *whatsoever* is self-nullifies Twitter's TOS opening the door to an implied contract. See

32   CA Civ Code § 1619 (2018) 1619.  "A contract is either express or implied."

## II.   Twitter's Non-specificity

33

34
35   **DEF**. p1, par 1  " Now rather than adhering to Twitter's Terms, Plaintiff has sued Twitter,

36   Inc. ( Twitter ) and its CEO Jack Dorsey."

37

38   **Pltf.** Plaintiff continues to contend that he has adhered to Twitter's TOS and any

39   discrepancies are for a jury to decide. Twitter contends that they suspended Plaintiff for

40   violating their TOS regarding Hate speech yet fails to state with specificity how that

41   Plaintiff's " HANG THEM ALL " comment violated any of Twitter's following TOS:

42       " 'Hateful Conduct:  You may not promote violence against or directly attack or

43       threaten other people on the basis of race, ethnicity, national origin, sexual

44       orientation, gender, gender identity, religious affiliation, age, disability, or serious

45       disease. We also do not allow accounts whose primary purpose is inciting harm

46       towards others on the basis of these categories.

47       Hateful imagery and display names: You may not use hateful images or

48       symbols in your profile image or profile header. You also may not use your

49       username, display name, or profile bio to engage in abusive behavior, such as

50       targeted harassment or expressing hate towards a person, group, or protected

51       category.' " SAC DE 7, P. 9

## III.   TRACEABLE

53   **Def**. P. 1 PAR 2 "….Plaintiff lacks standing to sue Mr. Dorsey, because he alleges no

54   activity that is fairly traceable to Mr. Dorsey. "

55   **PLTF**. Plaintiff is suing Mr. Dorsey both in his official and personal capacity. Plaintiff has

56   referred to the Defendants' Negligent Hiring, Training and Supervision both generally

57   and specifically throughout case. Plaintiff *generally* alludes to Defendant Mr. Dorsey's

58   Negligent Hiring, Training and Supervision in Plaintiff's SAC DE 7 P.13  and DE 7, P 16-

59   17 respectively:

60          " … Defendants' misguided application…" DE 7 P.13

61          " ….. illegally embarked upon an illegal circumvention of the United States

62          Constitution in attempting to impose on United States citizens the legal

63          cultures of foreign countries i.e. India, China, Russia, Germany, United

64    Kingdom etc. Many of these foreign countries were once or still are

65    considered third world countries because of their former or present totalitarian

66    subjugation or colonizing regimes. "DE 7, P 16-17

67    Plaintiff *specifically* mentions Mr. Dorsey's Negligent Hiring, Training and

68    Supervision in Plaintiff's answer DE 33, Exhibit A, P.5, Item (6). Supported by:

69    ' However, "[u]nlike on a Rule 12(b)(6) motion ... on a Rule 12(c) motion the

70    [C]ourt may consider the Answer as well." *Alexander v. City of Greensboro,* No.

71    1:09-CV-293, 2011 WL 3360644, at *2 (M.D.N.C. August 3, 2011); *Rinaldi v.*

72    *CCX, Inc.,* No. 3:05-cv-108, 2008 WL 2622971, at *2 n. 3 (W.D.N.C. July 2,

73    2008) (noting that "the Court considers the Answer as well as the

74    Complaint"); *Bradley v. Ramsey,* 329 F.Supp.2d 617, 622

75    (W.D.N.C.2004) (finding that as it relates to Rule 12(b)(6), the key difference

76    under Rule 12(c) is "the [C]ourt is to consider the [A]nswer as well as the

77    [C]omplaint"). The "factual allegations in the [A]nswer are taken as true to the

78    extent they have not been denied or do not conflict with the [C]omplaint."

79    'Mendenhall v. Hanesbrands, Inc., 856 F. Supp. 2d 717 - Dist. Court, MD North

80    Carolina 2012

## IV.    Plaintiff clearly stated Date, Time and Place

81

82    **DEF**. P1, PAR 2. " …Plaintiff cannot allege facts sufficient to overcome the fatal

83    deficiencies in his SAC. "

84

85  **PLTF.** Defendants' statement on page 1 of the Introduction is indeed premature.

86  Plaintiff has clearly stated a Date, Time and Place of when the incident took place.

87  Please see DE 7, P. 3:

88      " Plaintiff's *online* Twitter response "HANG THEM ALL" on *September 7, 2019* to

89      another tweet prompted Defendants Twitter Foundation/ Twitter, Inc, Vijaya

90      Gadde and CEO Jack Dorsey to arbitrarily suspend Adrian Rangel's Twitter

91      account - religiouserpico. Plaintiff contends that his "HANG THEM ALL" response

92      / tweet produced no action, was not imminent, nor was likely to occur. It is

93      important to note that the Plaintiff Adrian Rangel is not a member of any

94      extremist group. Plaintiff also contends that his response "HANG THEM ALL"  to

95      another's initial tweet was so ambiguous and nebulous that it did not actually

96      violate any of Twitter's Rules or Policies."

97  ## V.    TWITTER INCORRECTLY ACCUSES

98  ## PLAINTIFF OF TOS VIOLATION

99  **DEF.** P.1, PAR 2 " …Twitter merely exercised the rights granted to it under the Terms.  "

100  **PLTF** Plaintiff continues to contend that he did not violate Twitter's TOS. Moreover,

101  Defendants continue to allege that Plaintiff violated the TOS in *nonspecific* terms.

102  Please see DE 7, P.4

103      " ' Plaintiff continues to contend that he has adhered to Twitter's Terms and any

104      discrepancies are for a jury to decide.  Twitter contends that they suspended

105      Plaintiff for violating their TOS regarding Hate speech yet *fails to state with*

106    *specificity* how that Plaintiff's " HANG THEM ALL " comment violated any of

107    Twitter's following TOS:

108    " **'Hateful Conduct:**  You may not promote violence against or directly attack or

109    threaten other people on the basis of race, ethnicity, national origin, sexual

110    orientation, gender, gender identity, religious affiliation, age, disability, or serious

111    disease. We also do not allow accounts whose primary purpose is inciting harm

112    towards others on the basis of these categories.

113    **Hateful imagery and display names:** You may not use hateful images or

114    symbols in your profile image or profile header. You also may not use your

115    username, display name, or profile bio to engage in abusive behavior, such as

116    targeted harassment or expressing hate towards a person, group, or protected

117    category.' "  SAC DE 7, P. 9

118    ## VI.    FORUM ?!?

119    **DEF**. P.2, PAR 2 " ….forum selection clause….which is valid and controls here… "

120    **PLTF**.  The forum selection clause is binding so long as it does not infringe on the 14th

121    Amendments' concept of due process fairness:

122    ' We also have emphasized that jurisdiction may not be grounded on a contract

123    whose terms have been obtained through "fraud, undue influence, or

124    overweening bargaining power" and whose application would render litigation "so

125    gravely difficult and inconvenient that [a party] will for all practical purposes be

126    deprived of his day in court." *The Bremen* v. *Zapata Off-Shore Co.,* 407 U. S., at

127    12, 18. Cf. *Fuentes* v. *Shevin,* 407 U. S. 67, 94-96 (1972); *National Equipment*

128    _Rental, Ltd._ v. _Szukhent,_ 375 U. S. 311, 329 (1964) (Black, J., dissenting)

129    (jurisdictional rules may not be employed against small consumers so as to

130    "crippl[e] their defense"). 'Burger King Corp. v. Rudzewicz, 471 US 462 -

131    Supreme Court 1985 ( BOC OFFENDING 14TH amendment of fair play and

132    justice **(**_nternational Shoe Co._ v. _Washington,_ 326 U. S. 310, 320 (1945)**.**)

---

## VII.    Plaintiff concedes to what exactly??

134    **DEF**. P.2, PAR. 4 ".... Plaintiff concedes in the SAC, he agreed to Twitter Terms ......"

135    **PLTF**. Plaintiff conceded to Twitter's TOS within the prevailing laws of the land.

136    Please see SAC DE7, P. 2:

137    " ....all Twitter users must consent to Twitter's rules and policies subject to the

138    prevailing law of the land......"

## VIII.    ....for any or no reason ....

140    **DEF** P. 2, PAR 5. " .....for any or no reason....."

141    **PLTF**  Plaintiff understands the for any or no reason. However, this does not explain

142    away any (1)Twitter implied contract, (2) what is to be done with the member's records

143    after suspension or termination,  (3) whether or not Twitter's online service agreement

144    aligns with US law or (4) whether or not the Twitter TOS contradicts itself rendering

145    itself invalid.

## IX.    WHAT INDIVIDUAL, WHAT GROUP OF PEOPLE ??

147    **DEF**. P.3, PAR1 " .....against an individual or group of people. "

148    **PLTF**. Again, Defendants have failed with specificity to explain against what individual

149    or group of people Plaintiff's " HANG THEM ALL " comment is against. Plaintiff

150    continues to contend that he has adhered to Twitter's TOS and that any discrepancies

151  are for a jury to decide.  Twitter contends that they suspended Plaintiff for violating their

152  TOS regarding Hate speech yet the Defendants fail to state with specificity how that

153  Plaintiff's " HANG THEM ALL " comment violated any of Twitter's following TOS:

154     " 'Hateful Conduct:  You may not promote violence against or directly attack or

155        threaten other people on the basis of race, ethnicity, national origin, sexual

156        orientation, gender, gender identity, religious affiliation, age, disability, or serious

157        disease. We also do not allow accounts whose primary purpose is inciting harm

158        towards others on the basis of these categories.

159     Hateful imagery and display names: You may not use hateful images or

160        symbols in your profile image or profile header. You also may not use your

161        username, display name, or profile bio to engage in abusive behavior, such as

162        targeted harassment or expressing hate towards a person, group, or protected

163        category.' "  SAC DE 7, P. 9

164                    ## X.   WHAT TARGET ?

165  **DEF**. P.3 PAR 2 " ......identifiable target....."

166  **PLTF**. Once again, the Defendants fail to point to the *identifiable target* Plaintiff is

167  alleged to refer to in his comment " HANG THEM ALL ". Again Defendants have failed

168  to specifically explain against what individual or group of people Plaintiff's " HANG

169  THEM ALL " comment is against. Plaintiff continues to contend that he has adhered to

170  Twitter's TOS and that any discrepancies are for a jury to decide.  Twitter contends that

171  they suspended Plaintiff for violating their TOS regarding Hate speech yet the

172  Defendants fail to state with *specificity* how that Plaintiff's " HANG THEM ALL "

173  comment violated any of Twitter's following TOS:

174  **" 'Hateful Conduct:** You may not promote violence against or directly attack or

175  threaten other people on the basis of race, ethnicity, national origin, sexual

176  orientation, gender, gender identity, religious affiliation, age, disability, or serious

177  disease. We also do not allow accounts whose primary purpose is inciting harm

178  towards others on the basis of these categories.

179  **Hateful imagery and display names:** You may not use hateful images or

180  symbols in your profile image or profile header. You also may not use your

181  username, display name, or profile bio to engage in abusive behavior, such as

182  targeted harassment or expressing hate towards a person, group, or protected

183  category.' "  SAC DE 7, P. 9

## XI.   San Francisco County, California !!

185  **DEF**. " ....requires disputes about Twitter's Terms or Twitter's services to be litigated in

186  San Francisco County, California. "

187  **PLTF**. Defendants' TOS and services both express and implied are subject to the

188  prevailing law of the land and the Constitutions' concept of fairness, namely:

189  ' We also have emphasized that jurisdiction may not be grounded on a contract

190  whose terms have been obtained through "fraud, undue influence, or

191  overweening bargaining power" and whose application would render litigation "so

192  gravely difficult and inconvenient that [a party] will for all practical purposes be

193  deprived of his day in court." *The Bremen* v. *Zapata Off-Shore Co.,* 407 U. S., at

194   12, 18. Cf. *Fuentes* v. *Shevin,* 407 U. S. 67, 94-96 (1972); *National Equipment*

195   *Rental, Ltd.* v. *Szukhent,* 375 U. S. 311, 329 (1964) (Black, J., dissenting)

196   (jurisdictional rules may not be employed against small consumers so as to

197   "crippl[e] their defense"). 'Burger King Corp. v. Rudzewicz, 471 US 462 -

198   Supreme Court 1985 ( BOC OFFENDING 14TH amendment of fair play and

199   justice (*nternational Shoe Co.* v. *Washington,* 326 U. S. 310, 320 (1945).)

---

## WATER UNDER THE BRIDGE

201   **DEF**. P.4 , PAR 2 " Without informing Defendants or seeking their permission....."

202   **PLTF**. Plaintiff has already apologized to the Court for this PRO SE blunder in DE 34,

203   Par.2.

## XII.   IRREDUCIBLE MINIMUM SATISFIED

205   **DEF**.P.4, PAR 4 '" [a]t an irreducible minimum, Art. III requires the party who invokes

206   the Court's authority " to show" that the [alleged} injury can be traced to the challenged

207   action" of the defendant.

208   **PLTF**. Plaintiff contends that he has plainly and clearly shown how the suspension of

209   his Twitter account violated Plaintiff's contractural ( both express and implied ) and

210   constitutional rights. Please see SAC DE 7, P. 3:

211        (1) *breached their access agreement contract* with Adrian Rangel because

212        Plaintiff Adrian Rangel did not actually violate Twitters' rule "You may not

213        promote violence against or directly attack or threaten other people on the basis

214        of race, ethnicity, national origin, sexual orientation, gender, gender identity,

215        religious affiliation, age, disability, or serious disease. We also do not allow

216    accounts whose primary purpose is inciting harm towards others on the basis of

217    these categories. " ( please see Twitter rules and policies on pp. 9 - 12)

218                                      SAC DE 7, P. 4

219    " (5) *violated the Uniform Electronic Transaction Act* in arbitrarily suspending

220    Plaintiff Adrian Rangel's online access agreement with Twitter ( Plaintiff Adrian

221    Rangel's religiouserpico account ). SAC DE 7, P.4

## XIII.   FACE

222

223    **DEF**. P.4 PAR. 5 DEF. " .....state a claim to relief that is plausible on its face. "

224    **PLTF**. Plaintiff continues to contend that he has a valid claim. Although Twitter is global,

225    it is a US Corporation and subject to US law. Plaintiff contends that although Twitter

226    portends to "facilitate" conversation around the world, it does the exact opposite thru

227    Twitter's confusingly conflicted TOS and frustrating *threat to suspend any account for*

228    *any reason*. Plaintiff contends that the Defendants by putting forth in their Twitter TOS

229    that Twitter protects against hate speech against only certain groups whilst not other

230    groups that the Defendants are offending US equal protection laws and 14th

231    Amendment's fundamental fairness laws at minimum.  Plaintiff contends that when

232    Twitter *implies to reward its members with continued online access* to the Twitter

233    platform for not speaking against certain protected groups while at the same time

234    threatening to suspend or terminate members *for any or no reason whatsoever* that the

235    Defendants are self-nullifying their express TOS contract and opening the door to an

236    implied contract. See  CA Civ Code § 1619 (2018) 1619. "A contract is either express or

237    implied."

## XIV.   FACE 2

238

239   **DEF**. P.5 PAR 1., "…..the complaint fails to describe a claim that is plausible on its face.

240   **PLTF.**  Plaintiff contends that he has reasonably stated how that the *Defendant's instant*

241   *suspension* of his account violated Defendants' own TOS both stated in words and

242   *implied.*  DE 44 P.1, PAR 1 "Twitter is……whose mission is to facilitate public

243   conversation around the world." Although Twitter is global, it is a US Corporation and

244   subject to US law. Plaintiff contends that although Twitter portends to "facilitate"

245   conversation around the world, it does the exact opposite thru its confusingly conflicted

246   TOS and frustrating *threat to suspend any account for any reason.* Plaintiff contends

247   that the Defendants by putting forth in their Twitter TOS that they protect against hate

248   speech against only certain groups whilst not others that the Defendants offend US

249   equal protection laws and 14th Amendment fundamental fairness laws at minimum. In

250   addition, Twitter *implies to reward its members with continued access* for not speaking

251   against certain protected groups while at the same time *threatening to suspend or*

252   *terminate* members *for any or no reason whatsoever* self-nullifying Defendants' TOS

253   and opening the door to implied contract. See  CA Civ Code § 1619 (2018) 1619.  "A

254   contract is either express or implied."

## XV.   FRAUD

255

256   **DEF**. P. 5, PAR. 1 ' Allegations of fraud….." state with particularity the circumstances

257   constituting the fraud….." '

258   **PLTF** . Plaintiff contends that he has shown with particularity in his SAC in describing

259   how that the entire service agreement contract took place online thru both written words

260   and implied contractural agreement. Although Twitter is global, it is a US Corporation

261  and subject to US law. Plaintiff contends that although Twitter portends to "facilitate"

262  conversation around the world, that Twitter does the exact opposite thru its confusingly

263  conflicted TOS and frustrating *threat to suspend any account for any reason.* Plaintiff

264  contends that the Defendants by putting forth in their Twitter TOS that Twitter protects

265  against hate speech against only certain groups while not others, that the Defendants

266  are offending US equal protection laws and 14th Amendment fundamental fairness laws

267  at minimum. In addition, Twitter *implies to reward its members with continued access* for

268  not speaking against certain protected groups while at the same time threatening to

269  suspend or terminate members *for any or no reason whatsoever* thus self-nullifying

270  Defendants' TOS and opening the door to implied contract. See  CA Civ Code § 1619

271  (2018) 1619. " A contract is either express or implied."

## XVI.    PLAINTIFF BOC PREVAILS ?

273  **DEF.** P.7, PAR 2, "To prevail on a cause of action for breach of contract, the plaintiff

274  must prove (1) the contract, (2) the plaintiff's performance of the contract or excuse for

275  nonperformance, (3) the defendant's breach, and (4) the resulting damage to the

276  plaintiff." Richman v Hartley, 224 Cal App. 4th 1182,1186 (2014).

277  **PLTF.** Plaintiff contends that Defendants *may have misquoted* the above because item

278  2 states plaintiff's performance not defendant's performance. Plaintiff contends that he

279  has sufficiently stated with particularity how that Defendants violated both their written

280  online service agreement as well as their implied service agreement. Although Twitter is

281  global, it is a US Corporation and subject to US law. Plaintiff contends that although

282  Twitter portends to "facilitate" conversation around the world, it does the exact opposite

283  thru it confusingly conflicted TOS and *frustrating threat to suspend any account for any*

284   *reason*. Plaintiff contends that Defendants putting forth in their TOS that Defendants

285   protect against hate speech against only certain groups while not others that the

286   Defendants are in essence offending US equal protection laws and 14th amendment

287   fundamental fairness laws at minimum. In addition, Twitter *implies to reward its*

288   *members with continued access* for not speaking against certain protected groups while

289   at the same time threatening to suspend or terminate members *for any or no reason*

290   *whatsoever*; thus, the Defendants are self-nullifying their Twitter TOS and opening the

291   door to an implied contract. See  CA Civ Code § 1619 (2018) 1619.  "A contract is either

292   express or implied."  In addition, Plaintiff has also stated how that he has suffered

293   negligent and intentional emotional distress due to the Defendants' suspension and

294   continued suspension of Plaintiff's account since Sept. 7 2019. See DE 7, P. 14

295

## XVII.    IMPLIED CONTRACT

297   **DEF**. P.7, PAR 3 " ….binding agreement….. "

298   **PLTF**. The binding agreement *was interpreted by Plaintiff to be both in writing and*

299   *implied* because of Twitter's confusingly conflicted self-nullifying contract arbitrarily able

300   to suspend accounts *at any time for any or no reason* within the prevailing laws of the

301   land. Plaintiff continues to contend that although Twitter is global, it is a US Corporation

302   and subject to US law. Plaintiff contends that although Twitter portends to "facilitate"

303   conversation around the world, that Twitter does the exact opposite thru Twitter's

304   confusingly conflicted TOS and *frustrating threat to suspend any account for any*

305   *reason*. Plaintiff contends that the Defendants by putting forth in their Twitter TOS that

306   Twitter protects against hate speech against only certain groups whilst not others that

307   the Defendants are offending US equal protection laws and 14th Amendment

308   fundamental fairness laws at minimum. In addition, Twitter *implies to reward* its

309   members with continued online access for not speaking against certain protected

310   groups while at the same time *threatening to suspend or terminate members for any or*

311   *no reason whatsoever*. Plaintiff contends that such confusing and conflicted reasoning

312   by the Defendants is self-nullifying of their Twitter TOS opening the door to an implied

313   contract. See  CA Civ Code § 1619 (2018) 1619 " A contract is either express or

314   implied."

315        Plaintiff also contends that his *case answers* as in Plaintiff's DE 33 answer/response

316   to the Defendants *can be considered* by the Court:

317        ' However, "[u]nlike on a Rule 12(b)(6) motion ... on a Rule 12(c) motion the

318        [C]ourt may consider the Answer as well." *Alexander v. City of Greensboro,* No.

319        1:09-CV-293, 2011 WL 3360644, at *2 (M.D.N.C. August 3, 2011); *Rinaldi v.*

320        *CCX, Inc.,* No. 3:05-cv-108, 2008 WL 2622971, at *2 n. 3 (W.D.N.C. July 2,

321        2008) (noting that "the Court considers the Answer as well as the

322        Complaint"); *Bradley v. Ramsey,* 329 F.Supp.2d 617, 622

323        (W.D.N.C.2004) (finding that as it relates to Rule 12(b)(6), the key difference

324        under Rule 12(c) is "the [C]ourt is to consider the [A]nswer as well as the

325        [C]omplaint"). The "factual allegations in the [A]nswer are taken as true to the

326        extent they have not been denied or do not conflict with the [C]omplaint."'

327        Mendenhall v. Hanesbrands, Inc., 856 F. Supp. 2d 717 - Dist. Court, MD North

328        Carolina 2012

329

## XVIII.    REASONABLY TO WHOM ?

330

331    **DEF**. P.8, PAR 2, " ….reasonably believes…..you have violated these Terms… "

332    **PLTF**  Plaintiff contends that the Defendants' confusingly conflicted self-nullifying online

333    service agreement exposes it to both (1) *implied contract law* and (2) interpretation by

334    the prevailing laws of the land.  Although Twitter is global, it is a US Corporation and

335    subject to US law. Plaintiff contends that although Twitter portends to "facilitate"

336    conversation around the world that Twitter does the exact opposite thru it confusingly

337    conflicted TOS and *frustrating threat to suspend any account for any reason.* Plaintiff

338    contends that the Defendants by putting forth in their Twitter TOS that Twitter protects

339    against hate speech against only certain groups while not others that Twitter is in

340    essence offending US equal protection laws and 14th amendment fundamental fairness

341    laws at minimum. In addition, Twitter *implies to reward its members with continued*

342    *online Twitter platform access* for not speaking against certain protected groups while at

343    the same time *threatening to suspend or terminate members for any or no reason*

344    *whatsoever* self-nullifies Twitter's TOS opening the door to an implied contract. CA Civ

345    Code § 1619 (2018) 1619.  "A contract is either express or implied."

## XIX.    PLAINTIFF EXPLAINED DAMAGES

346

347    **DEF**. P. 8, PAR 3, " ….nowhere does he explain how any of these damages were

348    caused by the alleged breach. "

349    **PLTF**.  Plaintiff does explain how that he arrives at the compensatory damages in DE

350    33, exhibit A ,P.19:

351        " …. Plaintiff is asking this Court to award the Plaintiff both jointly and or severally

352        $100,000,000.00 compensatory ( or $1,000,000.00 per day that Twitter has profited

353      off of Plaintiff's Profile Data whilst preventing Plaintiff access to his account and

354      records during a critical election year)  and $900,000,000.00 exemplary in damages

355      for the above violations ...." . Exemplary damages are up to the jury to decide.

356      Plaintiff supports his use of DE 33, exhibit A ,P.19 by the following:

357      ' However, "[u]nlike on a Rule 12(b)(6) motion ... on a Rule 12(c) motion the

358      [C]ourt may consider the Answer as well." *Alexander v. City of Greensboro,* No.

359      1:09-CV-293, 2011 WL 3360644, at *2 (M.D.N.C. August 3, 2011); *Rinaldi v.*

360      *CCX, Inc.,* No. 3:05-cv-108, 2008 WL 2622971, at *2 n. 3 (W.D.N.C. July 2,

361      2008) (noting that "the Court considers the Answer as well as the

362      Complaint"); <u>Bradley v. Ramsey, 329 F.Supp.2d 617, 622</u>

363      <u>(W.D.N.C.2004)</u> (finding that as it relates to Rule 12(b)(6), the key difference

364      under Rule 12(c) is "the [C]ourt is to consider the [A]nswer as well as the

365      [C]omplaint"). The "factual allegations in the [A]nswer are taken as true to the

366      extent they have not been denied or do not conflict with the [C]omplaint."

367      'Mendenhall v. Hanesbrands, Inc., 856 F. Supp. 2d 717 - Dist. Court, MD North

368      Carolina 2012

## XX.   INTERSTATE COMMERCE

370 **DEF**. P. 9, PAR 3, "Plaintiff's unlawful interference with interstate commerce claim also

371 fails because he has not identified a viable cause of action."

372 **PLTF**. Plaintiff contends that he has demonstrated a viable cause of action in his SAC

373 namely. SAC DE 7, P.3, Item 2:

374      "(2) *unlawfully interfered with interstate commerce* by denying Adrian Rangel online

375      Twitter access to shareholder paid-for national advertising. ".

## XXI.   RULE 9(b)

376

377 **DEF**. P 1, PAR 4., " ....do not satisfy Rule 9(b)... "the time,  place and content of the

378 alleged false representations, the method by which the misrepresentations were

379 communicated, and the identities of the parties to those misrepresentations. "Slaney,

380 244 F.3d at 597.

381 **PLTF**. The Plaintiff contends that he has satisfied Rule 9(b) in his SAC namely, in DE 7

382 P. 2 Par.2:

383        " THE INCIDENT.... The access agreement contract between Defendants Twitter

384        Inc., Vijaya Gadde and Jack Dorsey and Plaintiff Adrian Rangel was quid pro

385        quo. In exchange for Plaintiff's personal profile on Twitter, Defendants Twitter

386        Inc., Vijaya Gadde and Jack Dorsey provided Plaintiff Adrian Rangel access to

387        Twitter. Defendants Twitter Inc., Vijaya Gadde and Jack Dorsey then used

388        Plaintiff's personal profile along with other profiles to sell advertising space on

389        Twitter to potential advertisers. It is very important to note that even though

390        Defendants Twitter Inc., Vijaya Gadde and Jack Dorsey have suspended Plaintiff

391        Adrian Rangel's religiouserpico account that Defendants Twitter Inc., Vijaya

392        Gadde and Jack Dorsey are still allowing access by other Twitter users to

393        Plaintiff Adrian Rangel's personal profile account indicating that Defendants

394        Twitter Inc., Vijaya Gadde and Jack Dorsey are still profiting from Plaintiff Adrian

395        Rangel's personal profile religiouserpico account.  "

## XXII.   ELEMENTAL

396

397 **DEF**. P. 10 PAR 3. '" ...Plaintiff has failed to allege even the elements of fraud, which

398 are "(1) a knowingly false representation by the defendant; (2) an intent to deceive or

399   induce reliance; (3) justifiable reliance by the plaintiff: and (4) damages. "' Service by

400   Medallion, Inc v. Clorox Co., 44 Cal. App. 4th 1807, 1867 (1996).

401   **PLTF**. Plaintiff contends that he has alleged the elements of fraud in his SAC namely;

402   DE 7 P. 2 Par.2, sentence 1 by stating that Plaintiff *relied* on the following Twitter's TOS

403   and quid pro quo to retain active membership or online Twitter access to Plaintiff's

404   Twitter account:

405   " The access agreement contract between Defendants Twitter Inc., Vijaya Gadde

406   and Jack Dorsey and Plaintiff Adrian Rangel was quid pro quo. In exchange for

407   Plaintiff's personal profile on Twitter, Defendants Twitter Inc., Vijaya Gadde and

408   Jack Dorsey provided Plaintiff Adrian Rangel access to Twitter. Defendants

409   Twitter Inc., Vijaya Gadde and Jack Dorsey then used Plaintiff's personal profile

410   along with other profiles to sell advertising space on Twitter to potential

411   advertisers. It is very important to note that even though Defendants Twitter Inc.,

412   Vijaya Gadde and Jack Dorsey have suspended Plaintiff Adrian Rangel's

413   religiouserpico account that Defendants Twitter Inc., Vijaya Gadde and Jack

414   Dorsey are still allowing access by other Twitter users to Plaintiff Adrian Rangel's

415   personal profile account indicating that Defendants Twitter Inc., Vijaya Gadde

416   and Jack Dorsey are still profiting from Plaintiff Adrian Rangel's personal profile

417   religiouserpico account. "

418   *Later after being suspended by Twitter*, Plaintiff realized that he had relied on

419   Twitter's *implied contract* because of Twitter TOS' self-nullifying confusingly conflicted

420   online service agreement which on the one hand *implied continued Twitter Service if*

421   *Plaintiff followed Twitter's TOS* then later blind-sided Plaintiff  thru Twitters' *threat to*

422   *suspend or terminating for any or no reason* opening the door to Twitter's *implied*

423   *contract :* <u>CA Civ Code § 1619 (2018)</u> 1619.  "A contract is either express or implied."

424       The Defendants, Twitter Inc and CEO Jack Dorsey, collect consumer data (personal

425   property ) from subscribers thru their online service agreement.  The Defendants,

426   Twitter Inc and CEO Jack Dorsey then use subscribers' personal profile data property to

427   attract national and local advertisers to market their products and or services on the

428   Twitter platform. However, thru Twitter's confusing and conflicted TOS and Twitter's

429   *threat to suspend or terminate for any or no reason whatsoever,* a subscriber is often

430   left holding an *empty bag* once the Defendants have obtained not only subscriber's

431   personal data ( property ) but also an archive of the subscribers' personal tweeted

432   intellectual thought patterns and ideas.

433       As such, Plaintiff contends that the Defendants simultaneously hold out an *implied*

434   *contract* of continued Twitter online access for following Twitter's TOS while at the same

435   time contrarily stating that Twitter reserves the *right to suspend or terminate for any or*

436   *no reason whatsoever* in Twitter's express online service agreement contract. Plaintiff

437   thusly contends that the Defendants are guilty of fraud thru their confusing and

438   conflicted express online TOS service agreement as opposed to Twitter's *implied*

439   *contract* of continued access, barring a TOS violation, to the Twitter platform in return

440   for subscriber's personal data property and subscriber's Twitter archived intellectual

441   tweeted thought property records. In so doing, Plaintiff contends that the Defendants

442   have committed and continue to commit fraud against the Plaintiff and other similarly

443   situated Americans:

444           **U.S. Code § 1343.Fraud by wire, radio, or television**

445     Whoever, having devised or intending to devise any <u>scheme or artifice to</u>

446     <u>defraud</u>, or for obtaining <u>money</u> or property by means of false or fraudulent

447     pretenses, representations, or promises, transmits or causes to be transmitted by

448     means of wire, radio, or television communication in interstate or <u>foreign</u>

449     <u>commerce,</u> any <u>writings,</u> signs, signals, pictures, or sounds for the purpose of

450     executing such scheme or artifice .....

451

452           # XXIII.   NO ALLEGATIONS REMOTELY

453     **DEF.** P.11, PAR 2, " ...the SAC contains no allegations that remotely suggest how

454     Twitter's alleged conduct implicates this law. "

455     **PLTF.** Plaintiff contends that is it up to a jury to decide whether Twitter has violated this

456     law. Please see SAC DE 7, P. 4 Item (5):

457           (5) *violated the Uniform Electronic Transaction Act* in arbitrarily suspending

458           Plaintiff Adrian Rangel's online access agreement with Twitter ( Plaintiff Adrian

459           Rangel's religiouserpico account ).

460     SAC DE 7, P. 5:

461           **Uniform Electronics Transactions Act**

462           Chapter 4, Remedies, TOPIC 1 Agreements with respect to remedy

463           $4.03 Use of Automated Disablement to impair use.

464           (a) "Automated disablement " means the use of electronic means to disable or

465                impair the functionality of software.

466        (b)  A transferor may not use automated disablement if the process results in

467             the loss of rights granted in the agreement or the loss of use of other

468             software or digital content.

469                          ## XXIV.    SAY WHAT ??

470   **DEF**. P11, PAR 2 "...." ( holding that the Electronic Signatures in Global and National

471   Commerce Act, 15 U.S.C. & 7001, did not confer a private right of action)."

472   **PLTF**. Plaintiff contends that he is *completely befuddled* as to why the Defendants are

473   attempting to introduce the *Electronic Signatures in Global and National Commerce Act*,

474   15 U.S.C. & 7001 into this case. Plaintiff can only assume that the Defendants are

475   attempting to mislead the Court away from the *Uniform Electronic Transaction Act* which

476   was clearly introduced by the Plaintiff.

477                          ## XXV.    FIRST AMENDMENT

478   **DEF**. P. 12, PAR 1, " The First Amendment bars Plaintiff's claims. "

479   **PLTF**. Defendants have failed to allege with specificity how that Plaintiff's comment

480   "HANG THEM ALL " violated Twitter's TOS. Plaintiff contends that it is for a jury to

481   decide if Plaintiff's comment violated Twitter's TOS and whether Defendants Twitter,

482   Inc. and Jack Dorsey violated any *implied contract* in reference to the Plaintiff.

483                          ## XXVI.    FORUM 2

484   **DEF**. P13, PAR 2, " Where a contract contains a choice of law and a forum selection

485   clause, the Seventh Circuit applies the law designated in the choice of law provision to

486   determine whether the forum selection clause is valid. " " Here that law is California."

487   **PLTF**. Plaintiff continues to contend that Twitter's conflicted self-nullifying online service

488   agreement is confusing at best and self-nullifying at worst.  As such, Plaintiff contends

489   that the Defendants are subject to Defendants' implied online service agreement with

490   users and Plaintiff for obeying Twitter's TOS and the prevailing law of the land.

491       ' We also have emphasized that jurisdiction may not be grounded on a contract

492       whose terms have been obtained through "fraud, undue influence, or

493       overweening bargaining power" and whose application would render litigation "so

494       gravely difficult and inconvenient that [a party] will for all practical purposes be

495       deprived of his day in court." _The Bremen_ v. _Zapata Off-Shore Co._, 407 U. S., at

496       12, 18. Cf. _Fuentes_ v. _Shevin,_ 407 U. S. 67, 94-96 (1972); _National Equipment_

497       _Rental, Ltd._ v. _Szukhent,_ 375 U. S. 311, 329 (1964) (Black, J., dissenting)

498       (jurisdictional rules may not be employed against small consumers so as to

499       "crippl[e] their defense"). 'Burger King Corp. v. Rudzewicz, 471 US 462 -

500       Supreme Court 1985 ( BOC OFFENDING 14TH amendment of fair play and

501       justice **(**_nternational Shoe Co._ v. _Washington,_ 326 U. S. 310, 320 (1945).)

---

## XXVII.   UNREASONABLE ENFORCEMENT

503   **DEF**. P.13, PAR. 2, '" ....unless the plaintiff shows that the enforcement of the clause

504   would be unreasonable under the circumstances of the case. "'

505   **PLTF**. Plaintiff contends that he was _homeless_ about 4 years ago. ( see exhibit A  ) In

506   addition, Plaintiff has started a fledgling company _requiring his unbridled attention to_

507   _survive._ Moreover, _Illinois resident_ and Plaintiff Adrian Rangel has explained how that

508   despite his Twitter Account being suspended on Sept. 7, 2019 and thru the present, the

509   Defendants continue to (1) profit off of Plaintiff's _personal data property_ for marketing

510   purposes and how that (2) the Defendants have _continued to torment and harass Illinois_

511   _resident_ and Plaintiff Adrian Rangel thru _almost daily emails_ since both suspending his

512   Twitter account on Sept. 7, 2019 and the onset of this case on Oct. 24, 2019 causing

513   intense and grievous negligent and intentional emotional distress to the Plaintiff. Please

514   see DE 33 exhibits B and C

## XXVIII.   EXTRAORDINARY CIRCUMSTANCES

516   **DEF**. P.14, PAR 2. "…..absent extraordinary circumstances…."

517   **PLTF**. Plaintiff has attached exhibit A showing that he was homeless about 4 years ago.

518   In addition, Plaintiff contends that he has shown in DE 33 exhibit B and exhibit C…..

519   that the Defendants continue to use Plaintiff's personal data property and how that the

520   Defendants harass and torment by reaching out to Illinois resident and Plaintiff via

521   emails almost on a daily basis since both his Twitter account suspension on Sept. 7,

522   2019 and the onset of this case on Oct. 24, 2019. In support thereof please see: DE 33

523   exhibit B and exhibit C. In addition, Plaintiff, formerly homeless, has demonstrated his

524   relative smallness as a consumer thru the attached exhibit A.

## XXIX.   HOME LAW

526   **DEF**. P.1, PAR. 2, '" the interest in having the trial of a diversity case in a forum that is

527   at home with the law. "

528   **PLTF**. Plaintiff continues to contend that this Court is just as at home with the law as

529   any other court:

530       ' We also have emphasized that jurisdiction may not be grounded on a contract

531       whose terms have been obtained through "fraud, undue influence, or

532       overweening bargaining power" and whose application would render litigation "so

533       gravely difficult and inconvenient that [a party] will for all practical purposes be

534       deprived of his day in court." _The Bremen_ v. _Zapata Off-Shore Co.,_ 407 U. S., at

535  12, 18. Cf. _Fuentes_ v. _Shevin_, 407 U. S. 67, 94-96 (1972); _National Equipment_

536  _Rental, Ltd._ v. _Szukhent_, 375 U. S. 311, 329 (1964) (Black, J., dissenting)

537  (jurisdictional rules may not be employed against small consumers so as to

538  "crippl[e] their defense"). 'Burger King Corp. v. Rudzewicz, 471 US 462 -

539  Supreme Court 1985 ( BOC OFFENDING 14TH amendment of fair play and

540  justice (_nternational Shoe Co._ v. _Washington,_ 326 U. S. 310, 320 (1945).)

---

541  Plaintiff continues to contend that the Defendants fail in their Motion to Dismiss for

542  lack of _specificity_. Plaintiff also contends that the Defendants' Motion for Change of

543  Venue fails because the Defendants have continued past their suspension of Plaintiff's

544  account on Sept. 7, 2010 and the onset of this case on Oct. 24, 2010 and to the present

545  to reach out via email to Illinois resident and Plaintiff Adrian Rangel. In addition, Plaintiff

546  has demonstrated his homelessness as recently as 4 years again thru the attached

547  exhibit A.  As such. Plaintiff contends that changing the Venue for the Plaintiff to

548  Northern California would create extreme hardship for the Plaintiff possibly forcing the

549  Plaintiff to close his business. Plaintiff contends that he has shown the _extraordinary_

550  _circumstances_ necessary thru both Plaintiff's relative impoverishment and the

551  Defendants' incessant California emails to Illinois resident Plaintiff to justify the Courts'

552  both subject matter and personal jurisdiction over this case.

553  Wherefore, based on the forgoing, Plaintiff respectfully requests that the Defendants'

554  Notice of Motion to Dismiss and, in the Alternative, to transfer Venue (DE 46) be denied.

555  Dated: February 3rd 2020

556  Respectfully Submitted,

557  Adrian Rangel

558                                    **Attached:**

559        (1) Adrian Rangel's declaratory statement for exhibit A

560        (2) exhibit A

561

562                        **CERTIFICATE OF SERVICE**

563        I hereby certify that on this 3rd day of February_, 2020__, the foregoing was filed with

564   the Clerk of the UNITED STATED DISTRICT COURT, NORTHERN DISTRICT OF

565   ILLINOIS.

566        I also certify that on this 3rd day of _February__, 2020__, the foregoing was served

567   by U.S. Mail First Class upon:

568                        **Jeffrey Thomas Norberg**
569                        Neal & McDevitt
570                        1776 Ash Street
571                        Northfield, IL 60093
572                        847-441-9100
573                        Email: jnorberg@nealmcdevitt.com
574                        *ATTORNEY TO BE NOTICED*

575                                    _____
576
577                                               Adrian Rangel
578                        POB 1191,  Lake Zurich, IL 60047
579                                               312-696-9889

# UNITED STATES DISTRICT COURT

for the

## Northern District of Illinois

## EASTERN DIVISION

| | |
|---|---|
| Adrian Rangel | } |
|      plaintiff | } |
| | } |
|    v. | } |
| | } |
| Twitter Inc | } |
| | } |
| Jack Dorsey, | } |
|     Defendants | } |
| | } |

Judge Manish S. Shah

Magistrate Judge:

Sidney I. Schenkier

Cause: 1:19-cv-07020

**Declaration by Plaintiff Regarding Attached Exhibit A in Support of Plaintiff's Response to Defendant Twitter, Inc and Defendant Jack Dorsey's Motion to Dismiss and, in the Alternative, to Transfer Venue**

Comes now the Plaintiff Adrian Rangel, Pro Se and submits his Declaration by Plaintiff Regarding Attached Exhibit A in Support of Plaintiff's Response to Defendant Twitter, Inc and Defendant Jack Dorsey's Motion to Dismiss and, in the Alternative, to Transfer Venue stating the following:

Exhibit A is a true and accurate copy of the original letter from JOURNEYS The Road Home shelter minus the handwriiten underlined word <u>SHELTER</u> across the top.

I declare under penalty of perjury that the foregoing is true and accurate. This document was executed on February 2, 2020 in Chicago.

Dated: February 2ʳᵈ 2020

Respectfully Submitted,

Adrian Rangel

## CERTIFICATE OF SERVICE

I hereby certify that on this 3ʳᵈ day of February_, 2020__, the foregoing was filed with the Clerk of the UNITED STATED DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS.

I also certify that on this 3ʳᵈ day of _February__, 2020__, the foregoing was served by U.S. Mail First Class upon:

> **Jeffrey Thomas Norberg**
> Neal & McDevitt
> 1776 Ash Street
> Northfield, IL 60093
> 847-441-9100
> Email: jnorberg@nealmcdevitt.com
> *ATTORNEY TO BE NOTICED*

Adrian Rangel
POB 1191,  Lake Zurich, IL 60047
312-696-9889

# Exhibit A

JOURNEYS | The Road Home | 1140 East Northwest Highway | Palatine | Illinois 60074 | 847 963 9163 | www.journeystheroadhome.org

SHELTER

Nicole Harris
Case Manager
JOURNEYS| The Road Home
1140 E. Northwest Hwy.
Palatine, IL 60074

16 November 2017

To Whom It May Concern,

This letter is to confirm that Adrian Rangel, DOB 02/29/1960 is a client of Journeys the Road Home, a 501 (c)(3) community service organization providing a continuum of services to the homeless and those at risk of becoming homeless in Suburban Cook County. Mr. Rangel utilized our services from October 2015 until April 2016 and was homeless as defined by HUD for this period of time.  Should you have any questions about our programs and services, please feel free to contact me at (847) 963-9163 ext. 118.

Warmest Regards,

Nicole Harris
Case Manager

