1      NORTHERN DISTRICT OF CALIFORNIA

2

Adrian Rangel                          }
            plaintiff                  }
                                       }
            v.                         }          Case No. 21-cv-08062-crb
                                       }
Twitter Inc                            }
                                       }
Jack Dorsey,                           }
            Defendants                 }
                                       }

3
4
5
6
7    **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS (DE 87)**
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

29
30
31
32
33
34

**TABLE OF CONTENTS**

35  I.    CLARIFICATION

36  II.   INTRODUCTION

37  III.  BACKGOUND

38  IV.   LEGAL STANDARDS

39  V.    ARGUMENT

40        A.  Plaintiff's claims are not barred by Section 230

41        B.  Nowhere in his SAC does Plaintiff indicate Twitter to be a publisher.

42        C.  Secondary Liability establishes the nexus to Jack Dorsey.

43        D.  Plaintiff claims humiliation and intentional and negligent infliction of

44            emotional distress against Defendants as damages.

45        E.  The content WAS published by the Plaintiff and not posted by another

46            information content provider.

47        F.  Twitter does not expressly prohibit the challenged conduct in its TOS.

48

49        Defendants' Motion to Dismiss should be denied.

50

51  VI.   CONCLUSION

52
53
54
55
56

# **TABLE OF AUTHORITIES**

1. Carey v. Piphus, 435 US 247 – Supreme Court 1978 266-267………….……p. 10

2. Hollinger v. Titan Capital Corp., 914 F. 2d 1564 – Court of Appeals, 9th Circuit 1990, 1578……………………………………………………………………………….p. 9

3. Zweig v. Hearst Corporation, 521 F. 2d 1129 – Court of Appeals, 9th Circuit 1975 at 1132……………………………………………………………………………….p. 9

CLARIFICATION

1) Defendants have twice misstated the Uniform Electronic Signature Act for the Uniform Electronic Transaction Act in both their Motions to Dismiss (DE 44, p. 11, line 18 and DE 87, p.4, line 12). This has been brought to the Defendants attention in Plaintiff's Response to Motion to Dismiss (DE48). Nevertheless the Defendants imply the same misstatement of the Uniform Electronic Signature Act for the Uniform Electronic Transaction Act in (DE87). Plaintiff contends that the Defendants are deliberately attempting to mislead and confuse the Court with the aforementioned misstatements.

2) Defendants also continue to mischaracterize SAC as a Constitutional case when it is clearly a Breach Of Contract case. (DE 7 titled Breach of Contract Complaint)

3) Twitter continues to contend that Twitter is a free service. (DE 87,p.2, line 23) Plaintiff contends that Twitter is not a free service. Members must enter their personal information in exchange for Twitter service or a quid pro quo scenario.

4) Defendants make a big to do of Plaintiff's filing of 3rd and 4th Amended complaints. This was a result of a miscommunication/ misunderstanding between the Clerk's Office and the Plaintiff; no harm no foul.

# I. INTRODUCTION

118
119

120   Plaintiff's Twitter account religiouserpico was suspended on Twitter on September 7,
121   2019. Plaintiff contends that Twitter's TERMS OF SERVICE (TOS) is a mutually binding
122   contract and that Twitter *did not* keep their end of the contract by suspending Plaintiff's
123   service outside of Twitter's TOS and  against Twitter's mutually binding TOS contract.
124   Twitter's TOS designates specific groups or individuals in its TOS which must *not be*
125   *targeted* or offended. They are ( DE7, SAC p.9, 4th par.): " women, people of color,
126   lesbian, gay, bisexual, transgender, queer, intersex, asexual individuals, marginalized
127   and historically underrepresented communities. " Plaintiff continues to contend that his
128   phrase " HANG THEM ALL" did not target or offend any of those groups or individuals.
129   In addition, Twitter says that it can suspend for " any or no reason at all". They forfeited
130   the " no reason at all" because in this case they have given a reason. Please see
131   attachment marked SUSPENSION.

132

133   Plaintiff appealed Twitter's SUSPENSION of his religiouserpico account to Twitter on
134   September 8, 2019 without recourse. Please see attachment marked APPEAL.

135

136   On November 12, 2019 Plaintiff filed suit against Twitter and Jack Dorsey for Breach
137   of Contract amongst offended constitutional rights.

138
139
140                                    # II. BACKGROUND

141

142       Plaintiff contends that Twitter has hired cheap workers from other lands using the

143   work visa program and brought them to America to either deliberately or negligently

144   proctor and silence Americans' free speech on Twitter. Plaintiff contends that many of

145   these cheap work visa employees were indoctrinated in their former authoritarian,

146   totalitarian, communistic, socialistic. fake democratic, fascist and other governmentally

147   inferior motherlands. Twitter's untrained cheap work visa employees' twisted foreign

148   laws, cultures, views etc. were applied to Americans. More specifically, Plaintiff

149   contends that only a foreigner could twist the American rhetorical phrase "HANG THEM

150   ALL" into some kind of real violent threat.

151

152

153                                       III. LEGAL STANDARDS

154

155       There are four standard elements required to establish a claim for breach of contract

156   in California: (i) the existence of a valid contract, (ii) the plaintiff's performance or excuse

157   for nonperformance, (iii) the defendant's breach of contract, and (iv) resulting damages.

158

159                                          IV.  ARGUMENT

160

161   A.       Plaintiff's claims are not barred by Section 230. Plaintiff continues to contend

162           that his phrase "HANG THEM ALL" does not violate Twitter's TOS in any way.

163           Defendants have not proven whether Plaintiff's phrase "HANG THEM ALL" is

Page **6** of **12**

164    referencing hanging Christmas tree lights, streamers or balloons. Likewise,

165    Defendants have not specifically proven violence or violent intentions by the

166    Plaintiff's phrase "HANG THEM ALL" making the crux of their Motion to Dismiss

167    futile. The Defendants argue everything but the Plaintiff's "HANG THEM ALL"

168    phrase. It is for this Court to decide whether the Defendants are being misleading

169    or less than transparent.

170    CDA 230 has 2 parts. 230(a) protects interactive *service* providers against

171    liability for reposts of third parties. CDA 230(a) does not apply in this case since

172    no liability for third party reposts of any sort has been proven by the Defendants.

173    CDA 230(b) affects publishing. It gives interactive *service* providers a ban

174    hammer of sorts to remove certain posts. This also does not apply in this case

175    because Plaintiff contends that Twitter's mutually binding contract (TOS) was not

176    broken by the Plaintiff when Plaintiff used the phrase "HANG THEM ALL". Rather,

177    Twitter itself broke the mutually binding contract (TOS) when it arbitrarily

178    *suspended service* to the Plaintiff. Plaintiff did not offend "women, people of color,

179    lesbian, gay, bisexual, transgender, queer, intersex, asexual individuals,

180    marginalized and historically underrepresented communities." Interestingly

181    enough, Twitter offended the Plaintiff, who is a Hispanic, a group often viewed as

182    marginalized.

183    Consequently, since Plaintiff did not offend "women, people of color, lesbian,

184    gay, bisexual, transgender, queer, intersex, asexual individuals, marginalized and

185    historically underrepresented communities" Twitter's allegation that Plaintiff broke

186    Twitter's TOS is a falsehood. *CDA Section 230 does not protect against falsehoods*

187 *or untruths*. Defendants' accusations of targeted harassment by the Plaintiff alone
188 does not make their accusations true nor have Defendants proven their
189 accusations to be true.

190

191 B. No where in his SAC does Plaintiff indicate Twitter to be a publisher. Contrarily,
192 Plaintiff continues to contend that Twitter is not a true publisher but rather only an
193 interactive *service* provider allowing users to post user intellectual data on Twitter
194 and then holding said intellectual data ransom in a tragic attempt at social
195 engineering Americans while undermining U.S. Constitutional law thru the
196 suspension of Americans' access to their intellectual data on Twitter. Continued
197 Twitter negative social engineering of Americans thru the leveraging of their online
198 intellectual data can only lead to further erosion of America's bedrock; the United
199 States Constitution.

200

201 C. Jack Dorsey incurs *secondary liability* under 9th Circuit Law in that as CEO of
202 Twitter he should have had knowledge of the legally and culturally untrained
203 Twitter Proctors suspending Americans' accounts and circumventing U.S.
204 Constitutional Law.

205
206 " Rather, appellants may proceed on their theories of liability based on
207 both § 20(a) and respondeat superior because it is no longer the law of
208 this circuit that the former supplants the latter "
209 Hollinger v. Titan Capital Corp., 914 F. 2d 1564 - Court of Appeals, 9th
210 Circuit 1990, 1578

211

212

213        "(a) Every person who, directly or indirectly, controls any person liable under any

214        provision of this chapter or of any rule or regulation thereunder shall also be liable

215        jointly and severally with and to the same extent as such controlled person to any

216        person to whom such controlled person is liable, unless the controlling person acted

217        in good faith and did not directly or indirectly induce the act or acts constituting the

218        violation or cause of action."

219

220        Zweig v. Hearst Corporation, 521 F. 2d 1129 - Court of Appeals, 9th Circuit 1975

221        at 1132

222

223

224

225   D.   Plaintiff claims *online humiliation* and the subsequent *intentional and negligent*

226        *emotional distress* against Defendants as *damages*. A law professor used Twitter's

227        humiliation of the Plaintiff to ridicule the Plaintiff and to call the Plaintiff a Trump

228        worshipper.

229        Plaintiff is a graduate of religious primary, secondary and collegial schools and

230        takes his religious faith very seriously. Many of Plaintiff's associates have gone on

231        the serve as missionaries and preachers around the world. For the Plaintiff to be

232        accused of worshipping Donald Trump is tantamount to accusing Plaintiff of

233        Idolatry, one of the 10 commandments. Plaintiff contends that the idolatry post has

234        been posted on the worldwide internet for close to 1000 days. Damages for 1

235   million dollars a day might be reasonable given that the idolatry accusation about

236   the Plaintiff posting was made on the worldwide internet about 1000 days ago or

237   around the filing of this complaint. Said ridicule can still found on the internet. ( see

238   exhibit HUMILIATION)

239

240   " Common-law courts traditionally have vindicated deprivations of certain "absolute"

241   rights that are not shown to have caused actual injury through the award of a nominal

242   sum of money.[23] By making the deprivation of such rights actionable for nominal

243   damages without proof of actual injury, the law recognizes the importance to organized

244   society that those rights be scrupulously observed; but at the same time, it remains

245   true to the principle that substantial damages should be awarded only to compensate

246   actual injury or, in the case of exemplary or punitive damages, to deter or punish

247   malicious deprivations of rights."

248

249   Carey v. Piphus, 435 US 247 - Supreme Court 1978 266-267

250

251

252

253   E. The content WAS posted by the Plaintiff and not posted by another information

254   content provider. CDA 230(a) only protects interactive service providers against

255   liability for postings by 3rd party posters.

256   F. Twitter does not expressly prohibit the Plaintiff's conduct in its TOS.

257   G. The Uniform Electronic Transaction Act prohibits Twitter's suspension because

258   Twitter's suspension was based on a false premise.

259

260                              CONCLUSION

261

262      Section 230 of the Communications Decency act does not apply to this case. (1)

263   230(a) protects an interactive service provider against liability for a 3rd party's posts. The

264   Plaintiff is not a  3rd party and Twitter is not being sued for any of Plaintiff's posts.

265   (2) 230(b) is not applicable in this case because Plaintiff contends that Twitter has not

266   published anything. Twitter merely allows others to post on their interactive service if

267   they ascribe to and keep Twitter's terms of service. (3) Defendants have not

268   deconstructed Plaintiff's "HANG THEM ALL" post to the point that Defendants state with

269   specificity how Plaintiff violated Twitter's TERMS OF SERVICE. (4) Defendants are not

270   protected when violating their own mutually binding agreement titled TERMS OF

271   SERVICE or for terminating service for no reason at all when Twitter has given a

272   specific, albeit false, reason for suspending Plaintiff's Twitter service. ( see exhibit

273   SUSPENSION)

274

275      Jack Dorsey is/was a controlling person as CEO of Twitter. As such, he incurs

276   secondary liability for the official actions of those under him. The SAC Relief Sought

277   paragraph holds the Defendants liable in their official and unofficial capacities jointly and

278   severally ( DE 7, p. 17, line 18) providing the nexus for Jack Dorsey's liability in this

279   case.

280

281      Damages are specified, 100 million compensatory and 900 million punitive for

282    plaintiff's worldwide humiliation on the internet. The damages are furthermore broken

283    down in this response (line 235).

284

285      Defendants' Motion to Dismiss should be denied in its entirety because it nowhere

286    shows with specificity how Plaintiff's "HANG THEM ALL" comment violated Defendants'

287    TERMS OF SERVICE regarding targeting or harassment of an individual or group.

288

289

290    Dated: 6.13.2022

291    /s/ *Adrian Rangel*

292    Adrian Rangel, Pro SE
293    POB 1191
294    Lake Zurich, IL 60047
295    312-696-9889
296

297

298

299

300

301                        Exhibit attachments:

302    AFFIDAVIT ( 1 page)

303    Exhibit SUSPENSION ( 2 pages plus 1 page spacer)

304    Exhibit APPEAL (2 pages plus 1 page spacer)

305    Exhibit HUMIILIATION  (5 pages plus 1 page spacer)

# GENERAL AFFIDAVIT

State of Illinois

County of Lake

Personally came and appeared before me the undersigned Notary, the
within named Adrian Rangel, who is a resident of the County of Lake, the
state of Illinois and makes his statement and General Affidavit upon oath
and affirmation of belief and personal knowledge that following matters,
facts, and things set forth are true and correct to the best of his knowledge:

Attached exhibit: SUSPENSION

Attached exhibit: APPEAL

Attached exhibit: HUMILIATION

DATED this the __13__ day of June 2022

Signed Affiant: _____

SWORN to subscribed before me, the __13__ day of  June  2022

NOTARY PUBLIC

My commission expires: __MAY 11, 2024__

EDGAR SALGADO
Official Seal
Notary Public - State of Illinois
My Commission Expires May 11, 2024

EXHIBIT

**SUSPENSION**

( SPACER)

Suspension

From: Adrian Rangel (adrianrangel@yahoo.com)

To: adrianrangel@yahoo.com

Date: Tuesday, May 31, 2022, 03:51 PM CDT



**6:28** 💬 🖼️                                        🔋 **5G** 📶 🔋

## ← **What do you think ?**



Options

---

# We've temporarily limited some of your account features

 **Adrian Rangel**
@religiouserpico

## What happened?

We have determined that this account violated the Twitter Rules. Specifically, for:

1. **Violating our rules against abuse and harassment.** You may not engage in the targeted harassment of someone, or incite other people to do so. This includes wishing or hoping that someone experiences physical harm.

 **Adrian Rangel**
@religiouserpico

 **SUSPENSION 2/2**

## @RealJack HANG THEM ALL !!

9:03 PM - 7 Sep 2019

As a result, we've temporarily limited some of your account features. While in this state, you can still browse Twitter, but you're limited to only sending Direct Messages to your followers — no Tweets, Retweets, follows, or likes. Learn more. Your account will be

.ıll Verizon LTE                    9:03 AM

🗑️    ✉️    ⬆️    ↩️    ⋮
Delete   Archive   Move   Reply all   More

||| 　　　○　　　 ‹

Sent from Yahoo Mail on Android

EXHIBIT

**APPEAL**

( SPACER)

Appeal

From    Adrian Rangel (adriangrangel@yahoo.com)
To      adriangrangel@yahoo.com
Date:   Tuesday, May 31, 2022, 03:51 PM CDT

 APPEAL 1/2

6:25 💬                                    📵 5G .ıll 🔋

← **Fwd: We've received your app...**

   to Me                          ☆
9/9/2019, 6:17 AM

---------- Forwarded message ----------
From: **Twitter** <notify@twitter.com>
Date: Sun, Sep 8, 2019 at 6:24 AM
Subject: We've received your appeal request
To: Adrian Rangel <adriangrangel@gmail.com>



Hello,

We've received your appeal request.

Our support team will take a look at the information you provided for your appeal. We will respond via email as soon as possible. Please note that while we review your appeal, you'll be unable to access your Twitter account.

If you would prefer, you may instead choose to cancel your appeal request and resolve the violations by proceeding to Twitter and following the on-screen instructions to restore your account to full functionality.

Thanks,
Twitter

**APPEAL 2/2**

Delete    Archive    Move    Reply    More

Sent from Yahoo Mail on Android

EXHIBIT

**HUMILIATION**

( SPACER)

# Man Sues Twitter For $1 Billion Claiming His Account's Suspension Violated His Right To Worship President Trump As A Demigod

There are probably more people like this guy than you'd think.

By TECHDIRT

November 1, 2019 at 11:18 AM





*(Photo by Jabin Botsford/The Washington Post via Getty Images)*

Several stupid lawsuits have been brought against social media companies. Some feature actual lawyers (but mostly from the same law firms) helping clients throw money away on allegations that Twitter and Facebook are at least indirectly responsible for terrorist attacks.

Others *also* use real lawyers, but lawyers willing to misread precedent to declare large social media platforms "public squares" and advance some very questionable arguments about First Amendment violations.

Then there's everyone else: the kind of people who think being temporarily suspended from a platform is a billion dollar Constitutional violation. (h/t Eric Goldman)

In this lawsuit, Adrian Rangel alleges his brief suspension violated the Constitution harder than it's ever been violated before. Rangel's Twitter account is no longer

suspended and it's not because he emerged victorious from this lawsuit. It has already been tossed by the federal court.

**HUMILIATION 2/5**

Rangel's short-lived lawsuit [PDF] asked for $1 billion in damages for his brief suspension, which he alleges violated his First Amendment right to yell "HANG THEM ALL" in a crowded platform. While we can agree Rangel's heated response to "topics from the mundane to the comical" probably should not have resulted in a suspension, we can also agree Twitter's moderation call did none of the following:

> *Plaintiff contends that by suspending Plaintiff's account religiouserpico Defendants Twitter Foundation and Vijaya Gadde violated Adrian Rangel's constitutional rights to ( (1) freedom of speech, (2) freedom of expression, (3) freedom of religion, (4) freedom of assembly, (5) freedom against unlawful seizure, (6) due process, (7) substantive due process and (8) equal protection of the United States Constitution.*

**Sponsored**



Know The Laws And Risks To Fortify Security With Seton Hall Law's Data Privacy And Security Compliance Certificate Program



Why IP Assets Can Be An Attractive Investment Opportunity



A Summer Associate's Guide To Thriving In The Biglaw Spotlight

This despite Rangel's claim on his own Twitter feed that he is a "CONSTITUTIONALIST."





## Adrian Rangel
@religiouserpico

CEO Hi Tech Corp., CONSTITUTIONALIST, SCOTUS
Quad-FECTA, Private Detective - retired, born again
KJV only Christian

Rangel logically points out his "HANG THEM ALL" tweet was not a threat. It targeted no one and was a hyperbolic expression of Rangel's general exasperation with the status quo. (I'm construing his complaint liberally. Rangel doesn't actually reference the tweet his responded to, but judging the rest of the complaint, it probably had something to do with liberal politicians.)

Now, while you might be familiar with misguided assertions that moderation by private platforms violates First Amendment rights (including freedom of assembly), you're probably unaware that account suspensions also violate religious rights.

*Before the Defendants suspended Plaintiff's account, Plaintiff used Twitter to proclaim his religious beliefs to the public of being a Born Again King James Bible Only Christian. Plaintiff included the being Born Again King James Bible Only Christian in his Twitter profile. In addition, Plaintiff followed and was followed by a number of people on Twitter – one group being people of like-minded religious beliefs.*

*Tangentially, Plaintiff contends that* **President Donald J Trump was nothing short of miraculously elected by God into the Presidency***; most specifically because of Donald Trump's victory in light of the tremendous media, political and social resistance to his election to the Presidency of the United States. Plaintiff used Twitter to support what Plaintiff contends is Donald J Trump's nothing short of miraculous election to the Presidency.* **As such, Plaintiff's religious beliefs are**

*intertwined with Plaintiff's support of Donald J Trump as President of the United States of America.*

 **HUMILIATION 4/5**

**Sponsored**



How Visionary GCs Can Find The Ideal Risk-Revenue Balance



Upcoming CLE Deadline? Make PLI.edu Your One Stop For All Things Compliance

Recourse options are limited for those who feel their cult-like admiration of elected leaders has been harmed by moderation efforts. "Limited" as in "zero." There are no options available to someone who has managed to "intertwine" their belief in God with their worship of a president.

Going from that surprising tangent, Rangel alleges the appeals process provided by Twitter doesn't approach the standards of due process provided by the Constitution. Of course they don't. They never will. Only the government has this obligation, much like the government's monopoly on First Amendment rights violations. The same goes for the Equal Protection clause, which is invoked in Rangel's lawsuit to make a perfectly valid point.

*Plaintiff further contends that Defendants Twitter Foundation and Vijaya Gadde have illegally embarked upon an illegal circumvention of the United States Constitution in attempting to impose on United States citizens the legal cultures of foreign countries i.e. India, China, Russia, Germany, United Kingdom etc. Many of these foreign countries were once or still are considered third world countries because of their former or present totalitarian subjugation or colonizing regimes.*

Case 3:21-cv-08062-CRB Document 84 Filed 06/13/22 Page 25 of 25

' Unfortunately, valid points aren't the same thing as cognizable claims and the court has no jurisdiction or duty to prevent Twitter from aligning moderation efforts with foreign laws. I agree with Rangel that Twitter should not be humoring authoritarian regimes by complying with removal notices and/or suspending accounts, but a billion dollar lawsuit claiming a private company violated Constitutional rights isn't the place to make this argument.

Since there's no moving forward with the case, there will be no discussion of Section 230 immunity, which would have seen this case dismissed if Twitter (a "California nonprofit," according to the plaintiff) had needed to file a response. Love it or hate it, social media platforms can moderate as they please without violating Constitutional rights. Understanding this simple concept would save a lot of people time and money.

Man Sues Twitter For $1 Billion Claiming His Account's Suspension Violated His Right To Worship President Trump As A Demigod

## More Law-Related Stories From Techdirt:

Deputy Sued Over Forced Baptism Sued Again By A Minor Alleging Another Bizarre Mixture Of God And Invasive Searches
Sometimes The Cost Of Revenue Is Too High: Twitter Bans Political Ads As Facebook Deals With Ongoing Shitshow
Cops: People In Their Own Homes Are In The Wrong Place At The Wrong Time Whenever A Cop Enters Unlawfully


eX. | HUMILIATION 5/5