IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN RANGEL,<br><br>    Plaintiff,<br><br>v.<br><br>JACK DORSEY, et al.,<br><br>    Defendants. | Case No. 21-cv-08062-CRB<br><br>**ORDER GRANTING MOTION TO DISMISS** |

Pro se Plaintiff Adrian Rangel is suing Defendants Twitter Inc. and its former CEO Jack Dorsey (collectively, Twitter) because Twitter suspended his account after he tweeted "HANG THEM ALL." The Court finds oral argument unnecessary. For the reasons below, the Court GRANTS the motion to dismiss and denies leave to amend.

**I.   BACKGROUND**

    **A.   Facts**

Twitter is a free social media platform that enables account holders to engage in dialogue and to share content with each other through short messages called "tweets." SAC (dkt. 17) at 1. Rangel is a resident of Illinois who has a Twitter account with the username "religiouserpico." Id. at 17, 2-3.

On September 7, 2019, Rangel alleges that he shared a tweet that stated "HANG THEM ALL" in response to another unspecified Tweet and was subsequently suspended. SAC at 3. Rangel brings claims for (1) breach of contract, (2) unlawful interference with interstate commerce, (3) wire fraud, (4) "shareholder fraud/public fraud," and (5) violating California's Uniform Electronic Transaction Act (UETA). See SAC at 3-4.

### B. Incorporation by Reference

In establishing his account, Rangel agreed to Twitter's Terms of Service and Policies, which he quotes extensively in his complaint. Id. at 2-3. The complaint therefore incorporates by reference Twitter's Terms of Service (Ex. A), and its policies on "[a]busive behavior" (Ex. B), "[h]ateful conduct" (Ex. C), and "[v]iolent threats" (Ex. D), as effective on September 7, 2019. See RJN (dkt. 87-1); Spector Decl. Exs A-D (dkts. 44-2 through 44-5); Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (9th Cir. 2018). Twitter's Terms of Service provide that Twitter "may suspend or terminate your account or cease providing you with all or part of the [Twitter] Services at any time for any or no reason, including, but not limited to, if we reasonably believe[] you have violated these Terms or the Twitter Rules and Policies." Terms of Service § 4. The policy on abusive behavior provides that "[y]ou may not engage in . . . attempt[s] to harass, intimidate, or silence someone else's voice," and Twitter "do[es] not tolerate content that wishes, hopes or expresses a desire for death, serious bodily harm or fatal disease against an individual or group of people." The policy on hateful conduct provides that Twitter "prohibit[s] content that makes violent threats against an identifiable target," including "declarative statements of intent to inflict injuries that would result in serious and lasting bodily harm, where an individual could die or be significantly injured." The policy on violent threats provides that "[y]ou may not threaten violence against an individual or a group of people."

### C. Procedure

On October 24, 2019, Rangel filed this lawsuit in the Northern District of Illinois, arguing that Defendants violated his constitutional rights. Compl. (dkt. 1). The district court dismissed Rangel's initial complaint sua sponte for failure to allege state action. Dkt. 5. Rangel filed a First Amended Complaint on November 12, 2019. Dkt. 7. To permit Rangel to correctly identify the defendants, Twitter consented to his filing a Second Amended Complaint on December 3, 2019. See SAC. Without seeking Twitter's consent pursuant to Rule 15(a)(2), Rangel filed third and fourth amended complaints on December 30, 2019 and January 10, 2020. Dkts. 28, 29. The court denied Rangel's request for leave

1   to file these complaints. Dkt. 42. Defendants then moved to dismiss the SAC or to
2   transfer this case to this Court. Dkt. 44. The court transferred the case and denied the
3   motion to dismiss as moot without prejudice to refiling. Dkt. 62. Twitter now moves to
4   dismiss the operative SAC. See Mot. (dkt. 87); Opp. (dkt. 94); Reply (dkt. 95).

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted. Dismissal may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019) (cleaned up). A complaint must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (cleaned up). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). "Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

Claims for fraud must meet the pleading standard of Federal Rule of Civil Procedure 9(b), which requires a party "alleging fraud or mistake [to] state with particularity the circumstances constituting fraud or mistake." Rule 9(b) "requires . . . an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (cleaned up). "This means that averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." In re

Google Assistant Priv. Litig., 546 F. Supp. 3d 945, 955 (N.D. Cal. 2021) (internal quotations omitted).

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). A court has discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008).

While courts "liberally construe the pleadings of pro se plaintiffs . . . [p]ro se plaintiffs must follow the same rules of procedure that govern other litigants." Rupert v. Bond, 68 F. Supp. 3d 1142, 1153 (N.D. Cal. 2014). Accordingly, pro se complaints are subject to dismissal with prejudice where the plaintiff has already had an opportunity to cure deficiencies and the Court concludes that amendment is futile. See McQuillion v. Schwarzenegger, 369 F.3d 1091, 1099 (9th Cir. 2004); see, e.g., Bhambra v. Port of Oakland, 2009 WL 10694600, at *3 (N.D. Cal. Mar. 23, 2009).

### III. DISCUSSION

The Court grants Twitter's motion to dismiss without leave to amend for several independent reasons.

#### A. Claims Against Dorsey

First, Rangel fails to state any claim against Dorsey. Rangel makes conclusory allegations that Dorsey acted (along with Twitter) to suspend his account or that his contract with Twitter is also with Dorsey, e.g., SAC at 2, but he pleads no remotely plausible facts in support. See Brock v. Zuckerberg, 2021 WL 2650070, at *4 (S.D.N.Y. June 25, 2021) (similar). Rangel argues that his claims survive under legal doctrines such as respondeat superior and control person liability under the Securities Exchange Act, see Opp. at 8-9, 11, but these have no relevance to his claims. Out of millions of Twitter accounts, it is implausible that Dorsey took specific action against Rangel. The Court

4

dismisses all claims against Dorsey.

**B.    Section 230**

As Rangel's claims attempt to hold Twitter liable for its publishing decision to suspend his account, Twitter is immune under the Communications Decency Act (CDA). Section 230(c)(1) of the CDA provides: "No provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  This provision protects from liability an interactive computer service provider when it exercises traditional editorial or publishing functions, including whether to post content or to withdraw content.  See, e.g., Barnes v. Yahoo!, Inc., 570 F.3d 1096, 1102 (9th Cir. 2009) (stating that "publication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content").

The three elements of Section 230(c)(1) are easily met.  First, despite Rangel's insistence to the contrary, e.g., Opp at 8, Twitter clearly is a "provider . . . of an interactive computer service" under the CDA.  See 47 U.S.C. § 230(f)(2); Dyroff v. Ultimate Software Grp., Inc., 934 F.3d 1093, 1097 (9th Cir. 2019) (the "prototypical" example is an "online messaging board"); Brittain v. Twitter, Inc., 2019 WL 2423375, at *2 (N.D. Cal. June 10, 2019) (Twitter is an interactive computer service).  Second, Rangel seeks to hold Twitter liable for decisions regarding "information provided by another information content provider"—that is, information that he, rather than Twitter, provided.  Rangel mistakenly believes that he himself cannot be a third-party information provider under this provision, but this view has been repeatedly rejected.  See, e.g., Ebeid v. Facebook, Inc., 2019 WL 2059662, at *4 (N.D. Cal. May 9, 2019).  Third, Rangel seeks to "treat [Twitter] as the publisher" because his claims derive entirely from Twitter's decision to exclude his content and suspend his account—that is, traditional publishing functions.  See Fair Hous. Council v. Roommates.com, LLC, 521 F.3d 1157, 1170-71 (9th Cir. 2008) (en banc) ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."); Barnes, 570 F.3d at

5

1103 ("[R]emoving content is something publishers do."). And Rangel's contract claim fares no differently because it is based on the Terms of Service, which is discretionary and merely "incorporate[s] . . . [Twitter's] right to act as a publisher." King v. Facebook, Inc., 2021 WL 5279823, at *13 (N.D. Cal. Nov. 12, 2021); see Terms of Service § 4. Accordingly, Twitter is immune from all of Rangel's claims.[1]

### C. Failure to State a Claim

Even if Twitter were not immune, Rangel's claims would still fail. Three claims lack a private right of action or legal theory, and the other two fail as a matter of law.

First, the contract claim fails because Rangel does not plausibly allege two necessary elements: (1) that Twitter breached a promise, or (2) that the breach caused him damage. See Richman v. Hartley, 224 Cal. App. 4th 1182, 1186 (2014). Under the Terms of Service, Twitter "may suspend or terminate your account . . . at any time for any or no reason, including, but not limited to, if we reasonably believe[] you have violated these Terms or the Twitter Rules and Policies." Terms of Service § 4. Twitter violated no promise in suspending Rangel's account because it is more than "reasonabl[e]" for Twitter to "believe[]" that a tweet that said "HANG THEM ALL" is "content that wishes, hopes, or expresses a desire for death . . . against . . . [a] group of people." See Spector Decl. Ex B (dkt. 44-3) (Abusive behavior policy). Rangel's contract claim also fails for the independent reason that he does not allege damages: though Rangel demands $100 million in compensatory damages, he nowhere alleges actual harm because of Twitter's actions. See Richman, 224 Cal. App. 4th at 1186.[2]

Second, the claim that Twitter unlawfully interfered with interstate commerce "by

---

[1] Twitter argues that it is also immune under Section 230(c)(2), which immunizes providers of interactive computer services from claims arising from good-faith actions to restrict access to material that they consider "excessively violent, harassing, or otherwise objectionable." 47 U.S.C. § 230(c)(2); see Mot. at 8 n.5, Reply at 3-4. The Court need not reach this argument, as all claims already fail on multiple other grounds.

[2] In his opposition, Rangel alleges damage from "online humiliation" because a law professor ridiculed him for filing this case. See Opp. at 9-10. But this allegation of damages is not in his complaint, so it cannot be considered. Even if it were, such damages (1) were not caused by Twitter's alleged breach, and (2) are not recoverable for breach of contract in California. See Low v. LinkedIn Corp., 900 F. Supp. 2d 1010, 1028 (N.D. Cal. 2012).

denying [Rangel] online Twitter access to shareholder paid-for national advertising" lacks any identifiable or cognizable legal theory. SAC at 3; see Godecke, 937 F.3d at 1208.

Third, the wire fraud claim fails both because Rangel lacks a private right of action and he does not allege fraud with particularity. See 18 U.S.C. § 1343; Fed. R. Civ. P. 9(b). Rangel seems to think that any breach of contract that occurs online is actionable wire fraud, see SAC at 3, but he has not adequately alleged breach, and that is not the law.

Fourth, the "shareholder fraud/public fraud" claim fails. To the extent that he alleges shareholder fraud, Rangel has not alleged that he purchased any Twitter stock, so he lacks standing. Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 731–32 (1975). As for other fraud, Rangel alleges vaguely that Twitter "misrepresent[ed] . . . to their shareholders, advertisers, the public and users as to Twitter's fiduciary responsibility regarding shareholders' return on investment and share tradeability." SAC at 4. This vague allegation falls far short of the basic requirements of Rule 8, much less the particularity required by Rule 9(b).

Finally, Rangel's claim under California's UETA fails because this law, which requires that electronic signatures be given legal effect, see Cal. Civ. Code § 1633.7(a), has no discernible relevance to his allegations. In any event, it confers no private right of action. See Burgess v. Forbes, 2009 WL 1068877, at *3 (N.D. Cal. Apr. 20, 2009).[3]

## IV. CONCLUSION

The Court therefore GRANTS Twitter's motion to dismiss. Because amendment would be futile, dismissal is with prejudice. Leadsinger, 512 F.3d at 532.

**IT IS SO ORDERED.**

Dated: July 19, 2022

CHARLES R. BREYER
United States District Judge

---

[3] To the extent that Rangel seeks to resurrect his constitutional claims, see SAC at 12-16, those claims still fail for lack of state action. See Dkt. 5 (dismissing sua sponte on the same ground).